*136
 
 OveRton, J.
 

 delivered the following opinion of the Court: —
 

 The only questions made at the bar are, whether the plea of seven years’ possession or the ordinary limitation of three years applies ? If either of these defences are good, the defendants must prevail.
 

 Fraud is the ground upon which this case rests; but it cannot be presumed ; it must either be proved directly or from circumstances. As, however, the Statute of Limitations has been argued at length, we are prepared to give an opinion upon it.
 

 It has been insisted that a person who gets the legal estate through fraud, holds it as a trustee; and that, therefore, as trusts are not barred in equity by the Statute of Limitations, it cannot apply in the case before the Court. And it is further insisted by the complainants’ counsel that the Statute of Limitations only applies in equity where the remedy sought is the same that would be given if the case were at law. No authority directly in support of this proposition has been produced, but it has been endeavored to be supported from analogy. The cases cited were Hardw. Rep. 278; 3 Eq. Ca. 579; 1 P. Wins. 743; 1 Wash. 145; 1 Eq. Ca. 303, 304, 371; 3 Eq. Ca. 578.
 

 It is believed that the books, when laying down the rule that trusts are not within the Statute of Limitations, contemplate express and not implied trusts. In support of this idea, it is said that the rule that a trust is not within the Statute of Limitations applies only between the trustee and
 
 cestui que trust,
 
 and not against a trust by implication of law. 5 Sup. Vin. Abr. 191. Again, in 3 Eq. Ca. 579, pl. 8, it is observed that the “rule in this Court that the Statute of Limitations does not bar a trust estate, holds only as between the
 
 cestui que trust
 
 and the trustee; not between
 
 cestui que, trust
 
 and trustee on one side, and strangers on the other, as that would be to make the statute of no force at all, for there is hardly any estate of consequence without such trust, and so the act would never take place; and, therefore, where a
 
 cestui que trust
 
 and his trustee are both out of possession for the time limited, the party in possession has a good bar against them both.” Lord Hardwicke is here speaking of express trusts, or those arising from contract. The principle of the case is, that where there is an adverse possession for the time limited, the statute is a bar. This principle is believed to be universal, and embraces cases respecting personal as well as real property. If a trust be by agreement, as by deed or will, the trustee cannot take advantage of the Statute of Limitations, because, in law, his possession is the possession of the
 
 cestui que trust.
 
 The statute cannot run against a man’s own possession; and this is the reason that a trustee will not be permitted to avail himself of it. But this reasoning does not apply to implied trusts. In the case before the Court it cannot be doubted that the defendants and Evan Shelby, under whom they claim, desighed to hold this land adversely for themselves, and not as trustees for the heirs of James
 
 *137
 
 Shelby. There is no proof that they agreed to do so, and the facts do not admit of a presumption that they did.
 

 The idea of a trust arising from a fraudulent transaction took its rise before the equitable jurisdiction of a court of chancery was fully settled. The gradual manner in which the Court of Equity acquired its jurisdiction, must be recollected by every lawyer. In the first stages of its progress it was strongly opposed by the common law courts; but fro-m the remotest times jurisdiction as to trusts was conceded to it, it was with more difficulty its jurisdiction as to fraud was acquired. In the earliest cases on this ground, the person committing a fraud was by the Court made a trustee by implication, in order that it might possess jurisdiction without dispute.
 

 Such appears to be the origin of trusts arising from fraudulent transac-. tions.
 

 Independently of the idea of trusts, it is contended that cases of fraud are not within the statute, and a case in 1 Wash. 145 has been relied on. We will remark that is only the argument of counsel, using the general expressions that trusts and frauds are not within the statute.
 

 An opinion has already been given how far trusts are within the statute. The case, as it relates to fraud, therefore, remains to be considered.
 

 In general, cases of fraud are as much within the Statute of Limitations as any other, This, however, admits of an exception, as where a fraud has been secretly practised, there the statute will not be a bar; but it is necessary in such case to aver in the bill that the fraud was not discovered within three years before instituting of the suit, and the complainant must show, at least from circumstances, that he could not well be supposed to have known that he was defrauded at an earlier period ; otherwise, this part of his bill will be considered as unsupported. For it is not conceived that because the complainant may think proper to state in his bill he has only discovered the fraud within three years that the defendant will thereby be precluded from relying on the statute. Hence it is incumbent on the plaintiff to prove,' from the circumstances attending the transaction, that such fraud .was not, in all probability, discovered until within three years previous to the institution of the suit.
 

 It is said in 4 Bac. Abr. 476 (Gwil. ed.), that fraud will not prevent the Statute of Limitations from operating, though discovered by the complainant within the time limited, unless it can be shown that the defendant was connusant of it; and for this position the case of Bree
 
 v.
 
 Holbeck, Doug. Hep. 655, is cited. This point, however, is not material to be considered, as the plaintiff has not averred in his bill the discovery of the fraud within three years. The cases produced by the complainants’ counsel show that, in general, the Statute of Limitations applies to cases originating in fraud, as well as any other. There is no exception in the statute covering cases of
 
 *138
 
 this kind, and there is no possible reason why the statute should not operate, except it be in the case of secret frauds above mentioned.
 

 But it has been further contended on behalf of the complainants that the statute will not apply, unless the relief sought in this Court is of the same nature of that which would be obtained at law. This position is not supported by any of the books. Compensation in damages would have been the relief administered at law, but in this Court a decree in specie may be obtained. This difference in the mode of redress has no effect upon the Statute of
 
 Limitations; it
 
 is pleadable in this Court as well as at law. In the case before the Court the statute must, at all events, have began to run from the time Evan Shelby entered the certificate of pre-emption, which was on the 23d day of March, 1784. Had he even been intrusted to keep the certificate, that act would have amounted to a conversion, supposing there was no fraud in the transaction; and if that were the case the statute would still apply. In every case where an action could have been sustained at law, and to which the statute might have been made to apply, so it would apply in equity, if relief were sought there. Nor is it material whether that relief be of one kind or another. It is the nature of the cause of action that must determine the application of the statute, and not the nature of the relief which can be afforded.
 

 The Statute of Limitations is highly beneficial to society, and ought to be liberally expounded; nor is a reliance on it a disparagement to any person. 1 W. Bl. Rep.' 287j 7 Mad. 12 ; 4 Mass. Rep. 188 ; Wythe’s Rep. 88, 94.
 

 The provisions of the statute, it is true, have been relaxed in England, in cases of contract, so far that a bare acknowledgment is deemed sufficient to take cases out of it. This was not the case in the time of that great and eminent common lawyer, Lord Holt; an express assumpsit was then required ; but in the time of Lord Mansfield, the relaxation first took place, The principles laid down by Lord Mansfield, have been adopted by our courts, nor is it designed to disturb, in the smallest degree, the practice upon this point. But it is very questionable whether such relaxations have proved beneficial to society. Hardin’s Rep. 278 ; Sch. & Lef. Rep. 413, 425.
 

 Upon a full view of the case before the Court, it seems clear that the limitations of three years is a bar. We do not think it necessary to decide whether the plea of seven years’ possession, is a bar to the action or not.