**Francis G. PRESCOTT and Wife, Carlene C. Prescott, Plaintiffs-Appellants,**

v.

**Ira T. ADAMS and Wife, Martha A. Adams; Jerry Jennings and Haury & Smith Realty Company, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 29, 1981.

Permission to Appeal Denied by Supreme Court Feb. 1, 1982.

Lawrence C. Maxwell, William L. Harbison, Trabue, Sturdivant & DeWitt, Nashville, for plaintiffs-appellants.

Gail Pigg, W. Ovid Collins, Jr., Cornelius, Collins, Higgins & White, Don L. Smith, Manier, White, Herod, Hollabaugh & Smith, P. C., Nashville, for defendants-appellees.

## OPINION

CANTRELL, Judge.

The question in this case is whether the Trial Court should have granted summary judgment sustaining the defense of statute of limitations in a case against the sellers of real estate and their agent. The action was for rescission of the contract of sale or, in the alternative, for damages for fraud, misrepresentation, negligence in the design of an improvement to real property, breach of their fiduciary duty, and breach of the implied warranties of marketability and habitability.

Early in 1974 the defendants Ira T. Adams and wife, Martha A. Adams, constructed a home on Green Valley Drive in Davidson County. They were in the business of building and selling houses for profit; accordingly, the house in question was built and placed on the market for $87,500.00. During construction of the house and thereafter heavy rains caused mud slides on the rear of the lot which flowed downhill

against the foundation of the house. In the spring or summer of 1975 when the problem proved to be a recurring one, in an attempt to correct the problem Mr. Adams installed drains on the hill in the backyard at considerable expense.

In September of 1976 Mr. and Mrs. Prescott moved to Nashville and contacted Haury and Smith Realty Company in search of a home. Jerry Jennings was assigned to them by Haury and Smith as an agent. The Adams house on Green Valley Drive was listed with Haury and Smith and it was the first one showed to them by Jennings. Mr. and Mrs. Prescott thought that the Adams house was out of their price range but they were unable to find anything suitable in the range they had in mind. Mr. Jennings was quick to point out undesirable features in other houses and returned often to the Adams house with which he could find no fault.

Mr. and Mrs. Prescott had reservations about the house on Green Valley Drive because, among other things, of the steep embankment directly behind the house. In order to alleviate their concern, Mr. Jennings arranged a meeting on the property with Mr. Adams. Both Adams and Jennings assured the Prescotts that, although there had been "mud washes" over the surface of the embankment, it was now completely stable. Mr. Adams described for them the installation of the "French drains" which was his effort to cure the mud slide problem. The Prescotts also discussed with Mr. Adams and Mr. Jennings some other conditions in the house which were apparently the result of vandalism. There were scratches on the marble vanities and some other damage inside the house which had to be repaired.

On September 20, 1976 the Prescotts purchased the property for $63,000.00. The contract included a provision that the purchase was on an "as is" basis.

In December of 1976 a neighbor informed Mr. Prescott that there had been a mud slide on the hill behind the house prior to their moving in. Mr. Prescott testified that he began to feel that "he hadn't been told all." In the spring of 1977 Mr. Prescott noticed a crack in the hill behind the house and was advised that the crack was probably caused by a water drainage problem. They took no action at that time because the inspector who advised them of the problem recommended the installation of French drains, which Mr. Adams told them had already been installed.

In May of 1979 during a particularly heavy rain the hillside behind the house broke loose and became a major landslide. The earth moved over the retaining wall behind the house, covered the turnaround area and stopped only a few feet from the house itself. The Prescotts engaged Oman Construction Company to haul away the mud and extensively regrade the hill behind the house. They did not contact Mr. Adams at that time. During the work performed by Oman Construction Company they discovered that the area behind the house contained a ravine which had apparently at one time been a dumping ground because it contained a large quantity of debris and trash which had been covered over with dirt. Apparently, the slides occurred when during heavy rains the ravine filled with water and floated the overburden down the hill.

In September of 1979, again during a particularly heavy rainfall, the hillside broke loose and again a major slide occurred. On July 11, 1980 the Prescotts filed suit against Mr. and Mrs. Adams, Haury and Smith and Jennings for fraud, misrepresentation, negligence in the design of an improvement to real property, breach of fiduciary duty, and breach of warranty. They demanded a jury to try the issues involved. The defendants filed answers, denying any wrongdoing and raising the defense of the statute of limitations. The depositions of Mr. and Mrs. Prescott and of Mr. Adams were taken and filed. Thereafter, the defendants filed motions for summary judgment on the basis that the applicable statutes of limitation barred the Prescotts' recovery as a matter of law. The Chancellor granted the motions for summary judgment. From that determination the Prescotts perfected their appeal.

The plaintiffs' complaint enumerates five basic theories upon which their causes of action are founded: (1) fraud in the inducement of a contract, (2) misrepresentation, (3) negligence in the design of an improvement to real property, (4) breach of a fiduciary duty, and (5) breach of the implied warranties of marketability and habitability. The plaintiffs pray for rescission of the contract and/or damages.

█ The appellants concede that except as to the causes of action for rescission, breach of fiduciary duty or breach of warranty, the applicable statute of limitations is found in T.C.A. § 28–3–105 which provides that actions for injuries to real property must be commenced within three years from the accrual of the cause of action. We are of the opinion that the same statute applies to the other causes of action also. According to our decisions, the applicable statute of limitations is determined according to the gravamen of the complaint. *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977). The major criterion in ascertaining the gravamen of an action is the kind of damage alleged. *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727 (Tenn.App.1980). This criterion is utilized regardless of whether the cause of action brought sounds in tort or in contract. The Supreme Court held in *Williams v. Thompson*,

> The word "actions" as used in [currently T.C.A. § 28–3–105] refers to the subject matter of the controversy and not to the remedial procedure. Whether an action for the recovery of damages for injury to personal or real property results from a breach of contract or from a tort, independent of contract, is immaterial.

223 Tenn. 170, 172, 443 S.W.2d 447, 449 (1969). The Court in *Williams* held specifically that the three year statute of limitations for damages to property applied to an action by purchasers against the vendor/builder of a residence for defects in the residence even though their complaint alleged breach of implied warranty in the contract of sale. Since the gravamen of the complaint in this case is for damages to real property, we think all of the theories advanced by the plaintiffs are governed by the three year statute of limitations.

█ The only doubt involved in the application of the three year statute of limitations pertains to the equitable remedy of rescission which is sought by the plaintiffs. There is competent authority for the proposition that a statute of limitations does not run against a right to sue in equity for rescission. 13 Am.Jur.2d *Cancellation of Instruments* § 44 (1964). However, there is a suggestion in our cases that with regard to this issue Tennessee has adopted the maxim "equity follows the law." Consequently, "... the right to relief in equity becomes barred when a right of action at law for damages is barred." 51 Am.Jur.2d *Limitation of Actions* § 26 (1970). *See Hughes v. Brown*, 88 Tenn. 578, 590, 13 S.W. 286, 289 (1890) ("It would be intolerable that equity should maintain a suit where the legal right was barred."); *Alvis v. Oglesby*, 87 Tenn. 172, 10 S.W. 313 (1889); *Haynie v. Hall's Executor*, 24 Tenn. 290, 291 (1844) ("... [T]he courts of chancery ... have uniformly held that in cases where any remedy exists at law, if a court of chancery gains jurisdiction of a cause, the time fixed in the statute as a bar to the action at law will also be a bar to a bill in chancery."); *Shelby v. Shelby*, 3 Tenn. 179, 184 (1812) ("In every case where an action could have been sustained at law, and to which the statute might have been made to apply, so it would apply in equity, if relief were sought there. Nor is it material whether that relief be of one kind or another. It is the nature of the cause of action that must determine the application of the statute, and not the nature of the relief which can be afforded.") This would appear to be the better rule. Application of statutes of limitation provide a measure of certainty and finality to land transactions. Therefore, we hold that the three year statute of limitations applies to the cause even though the equitable remedy of rescission is part of the prayer for relief.

█ In addition to the three year statute of limitations contained in T.C.A. § 28–3–105, covering all of the allegations in the

complaint, there is an additional statute covering the allegation of negligence in the design of an improvement to the property. That section is T.C.A. § 28–3–202 which provides that all such actions must be brought within four years after substantial completion of the improvement to real property, irrespective of injury or discovery. Section 28–3–204 provides that that section does not extend any period of limitations provided by the laws of Tennessee for the bringing of any action. Therefore, plaintiffs have three years from the date their cause of action accrued to bring suit for damages to real property arising out of the negligent design of an improvement with a four year ceiling on this ground running from the date of substantial completion. Section 28–3–203, however, provides that if an injury occurs during the fourth year after such substantial completion, an action is barred unless brought within one year of the date of injury. Therefore, if the injury occurred or was discovered on the last day of the four year period, the plaintiffs would receive an additional year to bring suit. Section 28–3–205 provides that this four year ceiling shall not be available as a defense to anyone found guilty of fraud or who has wrongfully concealed the cause of action.

In the present case the drains were installed by Mr. Adams in the spring or summer of 1975. The house was sold in October of 1976, and the large mud slide occurred in May of 1979. Suit was brought on July 11, 1980. Even if you assume that the improvement was not substantially complete until the summer of 1975 (installation of the drains) and plaintiffs' cause of action did not accrue until May 1979, plaintiffs' action based on the negligent installation of the drains was barred as of May 1980, approximately six weeks prior to the filing of the suit. This results since the injury occurred in the fourth year following substantial completion of the improvement. Under the statute, suit must be brought within one year of the date of injury.

However, plaintiffs contend that the ceiling in T.C.A. § 28–3–202 is inapplicable since the defendants were guilty of fraud in

performing or furnishing the design, or supervision, or construction. T.C.A. § 28–3–205. Although there is no allegation that Mr. Adams was guilty of fraud in the original construction of the home or in the installation of the drains, it is shown in the proof that Mr. Adams told the plaintiffs that the embankment was now completely stable and would not give them any problem. We think that is sufficient basis on which the jury could infer that the cause of action had been concealed and makes summary judgment inappropriate on this issue.

■ As to all the issues the critical determination is when the cause of action accrued. We think a jury question exists on this point. In *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn.App.1976), the Court defined the statutory words "from the accruing of the cause of action" in T.C.A. § 28–3–105 to mean "from the time when the plaintiff knew or reasonably should have known that a cause of action existed." The Court cited *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn.1975), as the basis of its holding. In *McCroskey*, a personal injury action governed by T.C.A. § 28–3–104, the Supreme Court held that the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. *Id.* at 491. It seems clear, then, that in a suit for property damages under T.C.A. § 28–3–105, the cause of action accrues at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered. The question in the instant case is when should the plaintiffs have reasonably known that their cause of action existed.

■ We believe it is inappropriate for the Chancellor to have decided this question on the basis of a motion for summary judgment. Although the facts may not have been in dispute, a dispute did exist as to the proper interpretation of those facts. Summary judgment for the defendant is not proper where, although the basic facts are

not in dispute, parties in good faith may disagree nevertheless about the inferences to be drawn from the facts. *See S. J. Groves & Sons Co. v. Ohio Turnpike Commission*, 315 F.2d 233 (6th Cir.), *cert. denied*, 375 U.S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963). In 54 C.J.S. *Limitations of Actions* § 399(b) (1948), it is said:

> The time of the accrual of the cause of action, as affecting limitations, is frequently a question of fact to be determined by the jury or trier of fact, as where the evidence is conflicting or subject to different inferences.

■ We cannot say as a matter of law that a greatly reduced purchase price, notice of "mud washes" and the installation of drains, reports of mud slides by neighbors and cracks in the ground in the year following the purchase were an indication of drainage problems such that in the absence of visible damage to the real property a reasonable man should have known that he had a cause of action. We think that is a question of fact which should have been submitted to the jury. Therefore, summary judgment should not have been granted for the defendants.

In summary, we think a question of fact exists as to when the plaintiffs knew or should reasonably have known that a cause of action existed. If that is found to have been in December of 1976 or the spring of 1977 (prior to July 11, 1977), then the plaintiffs are completely barred from suit. If, as a matter of fact, the cause of action occurred subsequent to July 10, 1977, then the plaintiffs can maintain their suit for fraud, misrepresentation, breach of fiduciary duty and breach of warranty. Their claim for negligence in the design or installation of the drains can be maintained only if, as a matter of fact, Mr. Adams was guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, or construction in connection with the improvement, or if he or his agent, Jennings, wrongfully concealed plaintiffs' cause of action.

The judgment of the Chancellor is reversed and the cause is remanded to the Chancery Court for further proceedings. The costs are taxed to the appellees.

REVERSED AND REMANDED.

TODD, P. J. (M. S.), and LEWIS, J., concur.