IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**ALICE HOLDEN,**

    Plaintiff-Appellant,

                                    Fayette Circuit No. 3798

Vs.                                    C.A. No. 02A01-9902-CV-00040

**FRED'S STORES OF TENNESSEE,
INC.,**

    Defendant-Appellee.
_____

FROM THE FAYETTE COUNTY CIRCUIT COURT
THE HONORABLE JON KERRY BLACKWOOD, JUDGE

Alan G. Crone and James J. Webb, Jr.
Crone & Mason of Memphis, For Appellant

David L. Bearman and Bradley E. Trammell
Baker, Donelson, Bearman & Caldwell of Memphis, For Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is a premises liability case. Plaintiff, Alice Holden, appeals from the order of the trial court granting summary judgement to defendant, Fred's Stores of Tennessee, Inc.

On November 27, 1995, Ms. Holden went shopping at Fred's in Somerville, Tennessee in order to purchase prescriptions for her mother and a few other household items. Entering through the front door she proceeded down aisle seven toward the pharmacy located at the back of the store. On her way down the aisle, plaintiff came upon another shopper who was pushing a basket. Prior to plaintiff's arrival at the store, a bottle of lamp oil had broken in aisle seven. An employee had attempted to clean up the spill with water and a mop and had placed a yellow warning sign in aisle seven. As plaintiff passed the other patron and entered the area of the aisle covered by oily water, she slipped and fell, landing on her left leg with her arms and head landing in the shelving. It was at this time, after plaintiff fell, that plaintiff first noticed the A-frame yellow warning sign, advising " Caution-Wet Floor." It is an uncontested fact that there was oil and water on the floor at the time that plaintiff proceeded down aisle seven, however there remains a dispute as to whether the warning sign posted by the defendant was sufficient warning to the plaintiff.

Ms. Holden's complaint alleges that she suffered pain and suffering, diminishment of the enjoyment of the ordinary pleasures of life, person injury, and incurred medical expenses.

Plaintiff presented five issues on appeal; however, we perceive the dispositive issue to be whether the trial court erred in granting defendant's motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party

moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). If the facts are uncontroverted, summary judgment is inappropriate if reasonable minds could differ as to the inferences to be drawn therefrom. *Keene v. Cracker Barrel Old County Store, Inc.*, 853 S.W2d 501 (Tenn. App. 1992); *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. App. 1981). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Ms. Holden contends that Fred's Stores did not discharge their duty to warn her of a slippery floor. According to Ms. Holden's deposition testimony the warning sign was shoved up against the shelving so that the warning was not visible to her as she proceeded down aisle seven and that the words of warning were actually facing the shelves. Ms.

Holden further asserts that given the placement of the sign, against the shelving, the finder of fact could conclude that it would be reasonable for a person to think that its placement against the shelves indicated that the spill and

clean up were limited only to a small area, close to the shelving, while the rest of the aisle remained clean and dry. Or, the signs placement could lead a finder of fact to conclude that the spill had been cleaned up and that the sign had remained so long that it had been pushed up against the shelves, and thus disregard the sign. A juror could conclude that a reasonable person walking in the aisle could come to one of many reasonable conclusions upon viewing the sign at the time that Ms. Holden fell. Ms. Holden asserts that because reasonable minds would not necessarily reach only one conclusion --that the sign gave adequate warning of the present danger, a floor wet with oil and water -- that there exists a genuine issue of material fact.

In addition to the assertion that reasonable minds could come to more than one conclusion about the placement of the warning sign, Ms. Holden contends that the language on the sign warned of a wet floor, yet the substance on the floor was a mixture of oil and water. A reasonable person might proceed over a floor that he believed was wet with water, while the same person might not proceed over a floor that he knew was covered with oil and water. Ms. Holden asserts that a patron might reasonably think that the signed warned of water that would dry, instead of oil and water that would not dry, therefore the warning provided by Fred's was inadequate because it did not warn patrons of the real danger present. In view of the differences between the risks associated with oil and water Ms. Holden argues that despite the fact that Fred's placed a warning sign in aisle seven, it failed to warn of a latent danger and therefore breached its duty of care.

Fred's asserts that once they placed the caution sign in aisle seven they had met or exceeded the applicable standard of care. Fred's asserts that the sign was placed in such a way that the cautionary language was visible to patrons walking from the front or from the

back of the store.  Fred's contends that although Ms. Holden disputes the placement of the sign at the time of her fall, she admitted that she did not know the original position of the sign and further admitted that the sign was

present at the time of her fall.  Fred's relies on the affidavit of their Somerville store manager [1] to define the applicable standard of care with regard to warning patrons about wet or slippery floors.  According to their store manager,  the duty of care to warn customers of a wet or slippery floor is met by placing a brightly colored caution sign in the immediate area of the spill.  Fred's contends that the proper question before this Court is not whether Ms. Holden actually saw the bright yellow caution sign, but rather, whether Fred's discharged its duty by placing a warning sign in aisle seven that was reasonably calculated to give Ms. Holden notice of the condition of the floor.  Furthermore, whether language on the sign was visible to Ms. Holden at the time that she fell is not an issue, since Ms. Holden admitted to knowing the purpose of brightly colored signs, such as the one used by Fred's Stores.

Fred's Stores asserts that Ms. Holden's argument, that oil and water present two different levels of danger, and therefore two different levels of care, is completely unsupported by any evidence or by affidavit, expert or otherwise.  Fred's Stores contends that the argument made by Ms. Holden that suggests what reasonable people might think upon viewing the sign is nonsensical and completely unsupported by the record.

Fred's asserts that it is entitled to summary judgment not only because it discharged its duty as a matter of law, but also because the facts of this case demonstrate that Ms. Holden is at least 50% negligent as a matter of law.  Fred's  contends that Ms. Holden had an adequate opportunity to become aware of her path, as she was a frequent shopper at Fred's, visiting there three or four times a week.  Furthermore, Fred's contends that Ms. Holden admitted to walking past the sign before she fell.  Fred's argues that reasonable

minds could not differ in concluding that Ms. Holden's inattention, as a matter of law, was the sole cause, or

at the least 50% the cause of her injury. Fred's asserts that, assuming the caution sign was in the position that Ms. Holden claimed, it would have protruded into the aisle, blocking almost one third of the aisle.  Fred's contends that since Ms. Holden was familiar with the "A " frame signs and their purpose, she had ample opportunity to see the sign, and take steps to avoid any danger.

Finally Fred's asserts that an independent basis for supporting summary judgment is that once it had placed the warning sign in aisle seven, any danger became an open and obvious one, thereby precluding Ms. Holden of any recovery.  Fred's asserts that as a matter of law it is not foreseeable that a customer who is familiar with the purpose of a brightly colored warning sign, and who walked directly around and past the sign visible to anyone who was attentive,  would fall on the very thing that the sign warned of -- a wet floor.

In order to bring a successful suit based on a claim of negligence, the plaintiff must establish:

> (1) a duty of care owed by the defendant to the plaintiff;  (2) conduct falling below the  applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.

*Bradshaw v. Daniel*, 854 S.W. 2d 865, 869 (Tenn. 1993) (citing *McClenahan v. Cooley*, 806 S.W. 2d 767, 774 (Tenn. 1991); *Lindsey v. Miami Dev. Corp.*, 689 S.W. 2d 856, 858 (Tenn. 1985)).   Duty, the first element of the claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm.  *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).  Whether a defendant owes a duty to a plaintiff in any given situation is a

question of law for the court. *Bradshaw*, 854 S.W.2d at 869.

The existence and scope of the duty of the defendant in a particular case rests on all the relevant circumstances, including the foreseeability of harm to the plaintiff and other similarly situated persons. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994).

Once duty is established, the question of breach of duty and proximate cause of the plaintiff's injury are usually treated as questions of fact.

> [W]hether the defendant breached its duty and whether the breach proximally caused the injury are generally decided by the trier of fact. (citations omitted) **These questions become questions of law only when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion.**

*Kelley v. Johnson*, 796 S.W.2d 155, 157 (Tenn. App. 1990)(citation omitted) (emphasis added).

In cases involving premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises. *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994). This duty is based upon the assumption that the owner has superior knowledge of any perilous condition that may exist on the property. *Kendall Oil Co. v. Payne*, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (1955). The duty includes the obligation of the owner to maintain the premises in a reasonably safe condition and to remove or warn against latent or hidden dangerous conditions on the premises of which the owner is aware or should be aware through the exercise of reasonable diligence. *Eaton*, 891 S.W.2d at 593-94. The duty of a premises owner is "a duty of reasonable care under all the circumstances" *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. App. 1996)(quoting *Eaton* at 593). The scope of this duty is grounded upon the foreseeability of the risk involved. *Id.* at 72 Thus, in order to prevail in a premises liability action, the plaintiff must show that the injury was a reasonably foreseeable

probability and that some action within the defendant's power more probably than not would have prevented the injury. ***Doe v. Linder Constr. Co.***, 845 S.W.2d 173, 178 (Tenn. 1992).

Traditionally, liability was not imposed on a premises owner by courts of this state for injuries that resulted from defective or dangerous conditions that were "open and obvious." ***See McCormick v. Waters***, 594 S.W.2d 385 (Tenn. 1980); ***Kendall Oil Co. v. Payne***, 41 Tenn. App. 201, 293 S.W.2d 40 (1955). However, the Supreme Court of Tennessee recently restricted this rule of law providing a balancing test in ***Coln v. City of Savannah***, 966 S.W.2d 34 (Tenn. 1998). The ***Coln*** Court held:

> the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm.

***Id.*** at 43.

The ***Coln*** Court further stated that "summary judgment remains appropriate where the plaintiff has not produced sufficient evidence to meet any component of a negligence claim, as a matter of law." ***Id.*** at 44.

Fred's supports summary judgment in its brief by arguing that once Fred's placed the yellow caution sign in the aisle they had met the standard of care. Fred's relies on ***Coln v. City of Savannah***, 966 S.W.2d 34 (Tenn. 1998), arguing that any peril that existed became open and obvious, thereby relieving the Fred's of any further duty. In addition, Fred's argues that summary judgement is proper because Ms. Holden is at least 50% negligent.

In the majority of cases after the decision of the Tennessee Supreme Court in ***McIntyre v. Balentine***, 833 S.W. 2d 52 (Tenn. 1992):

> [w]hen an invitee is injured because of dangers that are obvious, reasonably apparent, or as well know to the injured party as to the owner or operator of the premises, liability, if any

> should be determined in accordance with the principles of comparative fault analysis and the general negligence law of this state.

*Jones*, 940 S.W. 2d at 72 (quoting *Cooperwood v. Kroger Food Stores, Inc.*, No. 02A01-9308-CV-00182, 1984 WL 725217 (Tenn. App. W.S. Dec. 30,1994)). Before *McIntyre*, under the contributory negligence system the determination of

liability included the notion that:

> [n]egligence, contributory negligence, and proximate cause are ordinary issues to be decided by the jury, and can be withdrawn from the jury and decided by the court only in those cases where the facts are established by evidence free from conflict, and the inference from the facts is so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon it.

*Prince By and Through Bolton v. St. Thomas Hosp.*, 945 S.W. 2d 731, 735 (Tenn. App. 1996) (quoting *Frady v. Smith*, 519 S.W. 2d 584, 586 (Tenn. 1974)(regarding a motion for a directed verdict) (citation omitted)). That notion did not change after the adoption of comparative fault, and the principle remains that "comparison and allocation of fault issues are properly left to the jury." *Id.* at 735

In arguing that Fred's did not breach its duty of care to Ms. Holden, Fred's cites the Ohio case *Nibert v. K-Mart Corp.*, No. CA89-09-019, 1990 WL 67011 (Ohio App. May 21, 1990), *appealed to Ohio S. Ct. dismissed,* 563 N.E.2d 297 (Ohio 1997) (court held that summary judgment for the defendant was proper, stating that the warning was "reasonably calculated to give an invitee knowledge of a dangerous or hazardous condition". *Id.* at *3). Fred's also argues that where a business owner has discharged his duty with adequate warning, there is not a latent condition and defendant owes no further duty to plaintiff. *Dillard v. Vanderbilt University*, 970 S.W.2d 958, 960 (Tenn Ct. App. 1998).

We disagree with the defendant that the warning satisfied the duty requirement as a

matter of law, and instead agree with the plaintiff, that reasonable minds could differ on whether the defendant breached its duty of care. The deposition testimony of a department manager for the Fred's at pages 33-34 is illustrative on this point.

> Q: I think my previous question was, do you remember anything being on the floor when you arrived at the scene of the accident and found Ms. Holden in the floor? I thought you testified that you didn't remember there being anything on the floor.
>
> A: Well, the "wet floor" sign was there, and, no, I

> don't remember anything just being right on the floor. The "wet floor" sign tells me that something has been cleaned up there.[2]

With the presence of oil on the floor it is not unreasonable to expect Fred's to at least close the aisle and immediately clean the floor.

Following the analysis in *Coln* with regard to the duty issue, by weighing the foreseeable risk and gravity of harm against the burden placed on the defendant to engage in alternative conduct, we are of the opinion that a jury could conclude the harm was reasonably foreseeable and reasonable minds could differ in requiring alternative conduct. Under the circumstances present in this case, we hold that record does not lead reasonable minds to only one conclusion in considering if the defendant breached its duty to the plaintiff.

In light of our conclusion that reasonable minds could differ on whether the defendant breached its duty of care in providing an adequate warning of the wet, oily floor, we do not agree with the defendant that Ms. Holden was at least 50% negligent as a matter of law.

Accordingly, the order of the trial court granting summary judgment is reversed and this case is remanded for such further proceedings as necessary. Costs of appeal are assessed to Appellee.

_____  **W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____

**ALAN E. HIGHERS, JUDGE**

_____

**HOLLY KIRBY LILLARD, JUDGE**