IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 27, 2012 Session

## DEBORAH CHANDLER RUSSELL
## v. HOUSEHOLD MORTGAGE SERVICES ET AL.

Appeal from the Circuit Court for Davidson County
No. 06C1899     Thomas W. Brothers, Judge

No. M2008-01703-COA-R3-CV - Filed June 7, 2012

Homeowner challenges the trial court's dismissal at the summary judgment stage of all of her claims against lenders. We reverse the trial court's grant of summary judgment with respect to the homeowner's claims for intentional misrepresentation, negligent misrepresentation, fraud, and violation of the Truth-In-Lending Act. We affirm the trial court's dismissal of her claim under the Tennessee Consumer Protection Act.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Deborah Chandler Russell, Greenbrier, Tennessee, Pro Se.

Donald N. Capparella, Nashville, Tennessee, for the appellees, Household Mortgage Services and Household Financial Services.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Homeowner Deborah Chandler Russell brought suit against several entities: Household Mortgage Services, Household Financial Services, Sellers Financial Group, LLC ("Sellers"), and Southstar Funding, LLC ("Southstar"). The latter two entities are not involved in this appeal. The first two entities are part of HSBC Mortgage Services, Inc. and will be referred to collectively as "HSBC."

*Undisputed facts[1]*

In June of 2000, Ms. Russell was solicited by a representative of HSBC by mail and by telephone inquiring as to whether she was interested in refinancing her existing home mortgages. The purpose of HSBC's offer was to lower Ms. Russell's interest rate and monthly payments. On or about June 9, 2000, Ms. Russell visited the offices of HSBC in Madison, Tennessee. Ms. Russell discussed the possibility of refinancing with a person named "Sandy" who represented herself to be an employee of HSBC. Ms. Russell told Sandy that she was interested in learning more about her financing options and that her monthly payment, including property taxes and insurance, must not exceed $850 a month because she could not afford anything higher. Sandy stated that the actual payment might be a few dollars less or more but that the desired payment amount would not be a problem.

On July 21, 2000, Ms. Russell appeared at the offices of attorney William Davis in Brentwood, Tennessee, for the closing. She expected the lender to be HSBC. At the closing, Ms. Russell asked for a copy of all documents executed by her. The copies were not provided at the time of the closing, but later that afternoon copies of the following documents were faxed to Ms. Russell: the Truth-in-Lending Disclosure Statement, the promissory note, a monthly payment letter, a settlement statement, and a portion of the Uniform Residential Loan Application.

The Truth-in-Lending Disclosure Statement shows a total loan amount of $131,750 and lists Southstar as the lender. There is no interest rate listed, but it is clear that the monthly payment due was $890.53, in the range of what Ms. Russell claims she was anticipating. The promissory note listed Southstar and not HSBC as the lender, something that came as a surprise to Ms. Russell.

Thirty to forty days after the closing, Ms. Russell received a statement for payment that included a loan number of 0101094803. The statement gave her monthly payment as $1,390.80. This was $500.27 more per month than the payment of $890.53 printed on the Truth-in-Lending Disclosure Statement and the note that had previously been faxed to Ms. Russell. Ms. Russell asserts that she would not have entered into the loan had she been told the monthly payment would be $1,390.80.

---

[1]Because the trial court decided this case at the summary judgment stage, we take our statement of the facts directly from the undisputed facts submitted by HSBC and admitted by Ms. Russell for purposes of summary judgment.

On September 3, 2004, Ms. Russell filed a complaint in an adversary proceeding in federal bankruptcy court. This case was dismissed without prejudice on March 16, 2006, and Ms. Russell filed the present action in chancery court on July 14, 2006.[2]

*Lawsuit*

In her complaint in chancery court, Ms. Russell asserted causes of action for intentional misrepresentation, negligent misrepresentation, violation of the Truth-in-Lending Act, violation of the Tennessee Consumer Protection Act, and common law fraud. She also requested injunctive relief from a detainer warrant notifying her of HSBC's intent to take possession of her property. The matter was transferred to circuit court since the general sessions detainer warrant was on appeal in circuit court. In an order entered on August 29, 2006, the circuit court denied Ms. Russell's request for a temporary injunction and dissolved all prior temporary restraining orders. The court also dismissed her appeal from the detainer warrant and writ of possession judgment and ordered her to turn the property over to HSBC.

The defendants filed answers to Ms. Russell's complaint, and Southstar filed a counterclaim. HSBC's answer raised numerous defenses, including the statute of limitations. On November 27, 2006, HSBC filed a motion for summary judgment based on two grounds: (1) that all of Ms. Russell's claims were barred by the applicable statutes of limitations, and (2) that her claims under the Truth-in-Lending Act must fail because HSBC was an assignee of the loan, not the originator of the loan. (The other defendants also moved for summary judgment.) In support of its motion, HSBC submitted a letter from Ms. Russell to William Aldinger of HSBC and an affidavit of Dana St. Clair-Houghan of HSBC. HSBC also submitted a statement of undisputed facts. Ms. Russell's response to the defendants' motions for summary judgment included a response to HSBC's statement of undisputed facts (the basis for the previous factual summary).

In opposing summary judgment, Ms. Russell also submitted her own affidavit, which includes the following statements:

> 6. . . . I did not sign any document that represented my payment to be $1,390.80 per month. Some of the blanks in the loan documents were not completed at the time I signed them. I was told not to worry because they would be filled in later when the information was provided by Sandy at the Household office.
> . . .

---

[2]There is no dispute that, for purposes of the statute of limitations, the relevant filing date is September 3, 2004, when Ms. Russell initiated her suit in bankruptcy court.

8. When I still had not received copies of my loan documentation almost a week after the closing, I began to call the offices of Household. I was told that I might not receive the documents for as long as ninety (90) days after closing and that it "was no big deal."

9. Approximately thirty (30) to forty (40) days after closing, I received a statement from Household that indicated my monthly payment was $1,390.80. I knew that this was a mistake and immediately contacted Household. Household employees acknowledged to me that it was a mistake.

10. For the next 3 ½ years, I wrote and called employees, agents and attorneys of Household in an attempt to correct the mistake and obtain copies of my loan documents. Household employees told me several different things, including:

-it was a mistake;

-it was a computer error;

-it would be straightened out;

-don't worry about not receiving copies of my loan documentation;
-just pay the amount shown on the statement until it was straightened out;

-my file had been turned over to a supervisor because it was a mistake;

-my interest rate would be reduced;

-they were working to refinance my loan as the computer would not allow an adjustment to the payment shown;

-don't worry, they were not going to foreclose on my house even though I got a letter from an attorney about foreclosure;

-my loan documents were in archives and no longer in their computer so I would have to get copies of them from the closing agent.

11. Each Household representative told me that the last representative I had spoken with failed to make the proper notations in my file and had failed

to file the proper paperwork before the cut-off date for that particular month in order for the problem to be corrected in time to be reflected on the following month's statement.

12. Household representatives also told me that I would have to submit other paperwork because my original paperwork was missing and because the closing was a "no-doc" loan.

13. During the 3 ½ years, at the request of Household representatives, I was required to submit personal and confidential documents to them such as tax documents, bank statements, blank checks for them to keep on file, and a "hardship" letter stating my "special circumstances" despite the fact that Household representatives repeatedly assured me that this was simply a mistake and would be corrected.

. . .

15. I continued to make payments as instructed by representatives of Household.

16. I believed the things that Household employees told me. Afterwards, when my home was scheduled for foreclosure on April 8, 2004, I realized that Household was not going to correct the matter. I continued to try and get copies of my loan documents but Household did not send them to me until March 25, 2004 with the letter attached at Exhibit C. They finally sent them to me two days after William Aldinger, Chairman and CEO of Household, received my personal letter to him . . ..

17. I received my loan documents by overnight delivery on March 26, 2004.

18. When I received the loan documents, it was the first time that I had seen a document that purported to bear both my signature and a monthly payment of $1,390.80.

Ms. Russell also submitted the affidavit of Daniel Scott Bowman, who stated that he had lived with Ms. Russell for 20 years and had signed the Truth-in-Lending Disclosure Statement attached to her affidavit, which showed a monthly payment of $890.53. Mr. Bowman stated that he had not signed the Truth-in-Lending Disclosure Statement attached to HSBC's motion to summary judgment showing a monthly payment of $1,390.80. Mr. Bowman also stated:

I spoke by phone to Household employees who told me that they were trying to "fix" the problem with Ms. Russell's loan, that certain paperwork was missing, and that would should [sic] be patient and cooperate. They requested that I send them certain documentation to support a "re-financing" of Ms. Russell's loan which was necessary because their computer would not let them make the correction in the payment amount.

Household employees also told me by phone that Ms. Russell and I should ignore any letters about foreclosure because that department of Household was aware of the mistake and that they were working on it.

The defendants' motions for summary judgment were heard on March 9, 2007. In an order entered on August 14, 2007, the court granted the motions for summary judgment based upon a finding that there were no genuine issues of material fact. The court further stated:

The Court specifically finds that no genuine issue of material fact exists which could constitute fraudulent concealment on the part of any Defendant. The Court also finds that, as a matter of law, all claims of intentional misrepresentation, negligent misrepresentation, common law fraud, violations of the Federal Truth-in-Lending Act, and violations of the Tennessee Consumer Protection Act are time barred by the applicable statutes of limitations.

Further, the Court dismisses the allegations of violations of the Tennessee Consumer Protection Act as to all Defendants, as the subject matter of this lawsuit involved credit terms, a subject matter that is specifically exempted by Tenn. Code Ann. § 47-18-111(a)(3).

Ms. Russell filed a motion requesting findings of fact and conclusions of law, but the court denied the motion stating that the order granting summary judgment "provides sufficient explanation of the reasons for this Court's ruling to allow adequate appellate review."

In a June 30, 2008 order, the court granted motions to dismiss Southstar's counterclaim against Ms. Russell.[3] Southstar's counterclaim against Ms. Russell was the only obstacle to making the court's previous order granting summary judgment a final order.

---

[3]In April 2007, Southstar filed a suggestion of bankruptcy stating that all claims against the company were stayed pending further orders of the bankruptcy court.

With the removal of this obstacle, the court decreed that its order dated August 14, 2007 be made a final order pursuant to Tenn. R. Civ. P. 58. Ms. Russell appealed.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App.1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).

1. *Claims for misrepresentation and fraud*

The parties agree that the statute of limitations applicable to Ms. Russell's causes of action for intentional and negligent misrepresentation and fraud is the three-year statute of limitations found at Tenn. Code Ann. § 28-3-105. *See Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977); *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999); Tennessee Code Annotated § 28-3-105 provides that these actions must be filed within three years of the accrual of the cause of action. Under the discovery rule, a cause of action accrues "when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996); *see also McCrosky v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975). The question of whether a plaintiff discovered or should have discovered an injury is ordinarily a question of fact, and not appropriate for summary judgment. *City State*, 948 S.W.2d at 735; *Prescott v. Adams*, 627 S.W.2d 134, 139 (Tenn. Ct. App. 1981).

The defendants have the burden of proof to establish the defense of the statute of limitations. *Sherrill v. Souder*, 325 S.W.3d 584, 596 (Tenn. 2010). Thus, to be entitled to

summary judgment, the defendants must point to undisputed facts that establish their entitlement to the defense. *Hannan*, 270 S.W.3d at 9 n.6. HSBC argues that Ms. Russell had notice, as a matter of law, that she had sustained an injury when she received notification on or before September 1, 2000, of a monthly loan payment in excess of that to which she had agreed. Thus, asserts HSBC, the trial court properly held that her claims for negligent misrepresentation, intentional misrepresentation, and fraud were barred by the statute of limitations.

As stated above, the issue of when a plaintiff discovers or with reasonable care should have discovered an injury is generally a question of fact. *City State*, 948 S.W.2d at 735. Under the undisputed facts, we cannot agree with the conclusion that Ms. Russell knew or should have known, as a matter of law, that she had been injured when she got the bank statement with a higher monthly payment. This information may have given Ms. Russell inquiry notice, requiring her to exercise due diligence to determine whether an actionable injury had occurred. *See Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 856 (Tenn. 1995); *City State*, 948 S.W.2d at 735. Ms. Russell has, however, come forward with evidence that she immediately contacted HSBC and was assured that this statement was a "mistake" and that the company would rectify the mistake. Contrary to HSBC's argument, the fact that Ms. Russell made eleven payments in the amount of $1,390 does not establish, as a matter of law, that she had been injured. Rather, Ms. Russell was making excess payments that would be applied to her loan; otherwise, she risked foreclosure proceedings.

We need not consider whether Ms. Russell knew or should have known that she had been injured before she received copies of her loan documents from HSBC in March 2004 or whether HSBC engaged in fraudulent concealment. *See Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2002); *Fahrner v. Sw. Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn. 2001). We hold only that the trial court erred in finding that Ms. Russell discovered or should have discovered the injury as a matter of law by September 1, 2000.

### 2. *Claims under Tennessee Consumer Protection Act*

Actions under the Tennessee Consumer Protection Act ("TCPA") must be brought within one year of "a person's discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110. In light of our determination that the trial court erred in finding, as a matter of law, that Ms. Russell discovered or should have discovered the injury by September 1, 2000, we likewise must conclude that the trial court erred in dismissing her TCPA cause of action under the statute of limitations.

The trial court also dismissed the TCPA action pursuant to Tenn. Code Ann. § 47-18-111(a)(3), which exempts from the TCPA "[c]redit terms of a transaction which may be

otherwise subject to the provisions of this part, except insofar as the Tennessee Equal Consumer Credit Act of 1974 . . . may be applicable." The exclusion of the credit terms of a transaction from the TCPA has been explained as follows:

> The TCPA was enacted in 1977, after the enactment of the TILA [Truth-in-Lending Act]; further, the TCPA expressly exempts "credit terms of a transaction" from its scope of coverage. It is apparent, then, that the Tennessee legislature believed that consumers were already adequately protected by the TILA. Each of the plaintiffs' remaining alleged deceptive acts all relate to the terms of a credit transaction, namely the [sic] financing the purchase of a motor vehicle from the defendants.

*Beard v. Gen. Motors Acceptance Corp.*, CIV-1-92-149 (E.D. Tenn. May 6, 1993) (quoted in Thomas F. Barnett & George T. Lewis, *Are Automobile Financing and Other Credit Transactions That Comply with the Federal Truth-In-Lending Act Subject to Private Rights of Action under the Tennessee Consumer Protection Act?*, 71 TENN. L. REV. 695, 700-01 (2004)). Ms. Russell's TCPA action in this case relates to credit terms and therefore was properly determined to be excluded by Tenn. Code Ann. § 47-18-111(a)(3).[4]

While the trial court erred in granting summary judgment on the statute of limitations issue, the court properly found the TCPA inapplicable to Ms. Russell's claims.

### 3. *Claims under the Truth-in-Lending Act*

The Truth-in-Lending Act ("TILA") requires that an action be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In *Jones v. TransOhio Sav. Assoc.*, 747 F.2d 1037, 1041 (6th Cir. 1984), the court held that TILA is subject to equitable tolling and that, under the doctrine of fraudulent concealment, "the one year period shall begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." Thus, the same reasoning discussed under Part I above leads to the same conclusion here: that the trial court erred in granting summary judgment on Ms. Russell's TILA claims under the statute of limitations.

---

[4]Ms. Russell's reliance on *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999), is misplaced as this case is distinguishable on its facts and was decided under a different statutory provision.

CONCLUSION

We affirm the trial court's decision to dismiss Ms. Russell's TCPA claim but reverse its dismissal of all of the remaining claims. Costs of appeal are assessed against the appellees, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE